UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
1501 Broadway – 22nd Floor
New York, New York 10036
(212) 221-5700
Attorneys for Plaintiff
--------------------------------------------------------------------X

CHIMERA PLAZA 768 LLC,                                    Case No.:

                              Plaintiff,

             -- against --                                **COMPLAINT**

STEWART TITLE INSURANCE COMPANY,

                              Defendant.
--------------------------------------------------------------------X

     Plaintiff Chimera Plaza 768 LLC ('Plaintiff'), by and through its attorneys Goldberg

Weprin Finkel Goldstein LLP, as and for its complaint against defendant Stewart Title Insurance

Company ("Defendant"), respectfully alleges as follows:

**Overview of Action**

    1.    This is an action seeking recovery of damages based of Defendant's wrongful and

unjustifiable breach of an escrow agreement and ensuing breach of fiduciary duty. Pursuant to

the Escrow Agreement defined below, the sum of $5,000,000 (the "Escrow Funds") was

deposited by Plaintiff and entrusted to Defendant to be held in escrow only to be released or used

upon the written instruction of Plaintiff acting through its principal, Kayvan Hakim.

    2.    On July 3, 2018. Plaintiff made demand for release of the Escrow Funds.

Defendant refused to honor the instructions and thereby breached the escrow agreement by

defying Plaintiff and refusing to return the Escrow Funds to Plaintiff despite due and proper written demand.

3.      Defendant's breach of the escrow agreement and the fiduciary duty arising from it entitle Plaintiff to judgment against Defendant for the $5,000,000 wrongfully retained as well as consequential and exemplary damages, as well as attorneys' fees arising from Defendant's breach of its fiduciary duty.

## Jurisdiction and Venue

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332 because the dispute is between citizens of different States and the amount in controversy exceeds $75,000.00.

5.      Venue in this district is proper pursuant to 28 U.S.C. 1391(a) because the events or omissions giving rise to the claims raised herein occurred in the district.

## The Parties

6.      Plaintiff is a Delaware  limited liability company having a principal place of business c/o Hakim Organization, 3 West 57th Street, New York, New York 10019.

7.      Plaintiff, a Delaware limited liability company, has  two members, Burkhan Plaza 768 LLC, a Delaware limited liability company, and Hak Plaza LLC, a New York limited liability company.

8.      Burkhan Plaza 768 LLC's sole member is Shalal Khan, a citizen of Dubai, United Arab Emirates.

9.      Hak Plaza LLC's sole member is Kamran Hakim,  a citizen of New York.

10.     Upon information and belief, Defendant is a corporation organized under the laws of and with a principal place of business in the State of Taxes.

### The Escrow Agreement

11.     Defendant is a title company acting herein as an escrow holder, charged with fiduciary duties and responsibilities to Plaintiff.

12.     In November 2017, Plaintiff deposited with Defendant the Escrow Funds.

13.     Plaintiff was at the time contemplating entering into a potential real estate purchase and sale transaction.

14.     The operative terms and conditions of the escrow arrangement were set forth in a written Escrow Agreement dated as of November 22, 2017 (the "Escrow Agreement") executed by Kamran Hakim on behalf of Plaintiff and Joseph DeCiuttis, Esq., on behalf of Defendant (the "Escrow Agreement") A copy of the Escrow Agreement is annexed hereto as Exhibit "A".

15.     Plaintiff's principal, Kamran Hakim ("Hakim") was insistent that Defendant hold the $5,000,000 in trust exclusively for Plaintiff's benefit and that the money be released or utilized only upon Hakim's written instruction.

16.     The Escrow Agreement provides as follows:

> [Plaintiff] hereby appoint [*sic*] [Defendant] as its escrow agent for the purposes set forth herein and [Defendant] hereby accepts such appointment under the terms and conditions set forth herein.

17.     The Escrow Agreement addressed the placement of the $5,000,000 into Defendant's trust:

> [Plaintiff] agrees to deposit with [Defendant] the sum of $5,000,000 (the "Escrow Funds") on or about the date of this Agreement… [Defendant hereby agrees to hold, administer, and disburse the Escrow Funds pursuant to this Agreement.

18.     The Escrow Agreement established strict and unambiguous terms with respect to the release of the Escrow Funds:

> If at any time [Plaintiff] delivers written instructions to [Defendant] to disburse the full amount of the Escrow Funds to [Plaintiff], [Defendant] shall within one (1) business day make such disbursement by wire of immediately available funds to the account(s) designated by [Plaintiff] in such written instructions. No person is authorized or permitted to interfere in any way with the disbursement of the full amount of the Escrow Funds to [Plaintiff].

19.     The Escrow Agreement established that through December 2017, Hakim was the sole person authorized to issue written instruction on behalf of Plaintiff.

20.     After December 2017, the authority to demand return of the money to Plaintiff expanded to include not just Hakim but also Shalal Khan – but only for return of the money to Plaintiff. To the extent the Escrow Funds were to be disbursed to any person or party other than Plaintiff, such written instructions would only be permissibly issued by Hakim.

21.     Specifically, the Escrow Agreement provides as follows:

> Until December 28, 2017, Kamran Hakim is designated as the only authorized representative of [Plaintiff]. From and after December 28, 2017, any one of (i) Kamran Hakim, (ii) Shalal Khan, or (iii) any individual designated in writing by Kamran Hakim, acting alone, may give written instructions to the Escrow Agent on behalf of [Plaintiff]; *provided, however, that all disbursements of the Escrow Funds must be made by wire transfer using the instructions set forth on Exhibit A attached hereto unless otherwise consented to in writing by Kamran Hakim.*

*Emphasis added*.

22.     The wire instructions attached to the Escrow Agreement as Exhibit A were for the bank account of Hakim.

23.     The Escrow Agreement established that any notices given to Defendant under the Escrow Agreement were to be "delivered by overnight courier, hand, or sent by U.S. registered or certified mail, return receipt requested, postage prepaid, to the addresses set out below:

ESCROW AGENT:    Stewart Titled Insurance Company
825 Third Avenue
New York, NY 10022
Attn: Joseph DeCiuttis, Esq.

24.    On November 22, 2017, Plaintiff wired $5,000,000 to Defendant pursuant to the Escrow Agreement.

## Plaintiff's Demand for Return of the Escrow Funds

25.    On July 3, 2018, Plaintiff demanded in writing the return of the Escrow Funds.

26.    Specifically, by letter dated July 3, 2018 (the 'Demand Letter"), hand delivered to Defendant (and sent via Federal Express as well), Plaintiff demanded return of the Escrow Funds as follows:

> Reference is made to that certain Escrow Agreement (the "Escrow Agreement" between Chimera Plaza 768 LLC and Stewart Title Insurance Company ("Stewart"), dated as of November 22, 2017 and annexed hereto as Exhibit A, by which Stewart is holding the amount of $5,000,000.00 (the "Escrowed Funds").
>
> In accordance with the Escrow Agreement, Stewart is hereby directed to return the full amount of the Escrowed Funds, along with any interest earned thereon, via wire transfer to the wiring instructions indicated on Exhibit A to the Escrow Agreement.

A copy of Plaintiff's July 3, 2018 letter is annexed hereto as Exhibit "B".

27.    The Demand Letter was signed by Hakim.

28.    The Demand Letter was delivered by hand to Defendant at 825 Third Avenue, New York, New York 10022, Attn. Joseph DeCiutiis, Esq.

## Defendant's Breach of the Escrow Agreement

29.    Upon receipt of the Demand Letter, it was incumbent upon Defendant to, within one business day, wire the Escrow Funds to Plaintiff via the wire instructions annexed as Exhibit A to the Escrow Agreement.

30.     Rather than honor its contractual and fiduciary duties and wire the Escrow Funds as directed, by email dated July 3, 2018, Defendant advised Plaintiff that it needed the consent or approval of a third party who had no right to have knowledge of, much less authority to interfere with, Plaintiff's demand for return of the Escrow Funds.

31.     Defendant is in breach of the Escrow Agreement by reason of its refusal to follow Plaintiff's unambiguous and express written instruction regarding disbursement of the Escrow Funds.

32.     Defendant is in breach of its fiduciary duties owed to Plaintiff by reason of its refusal to follow Plaintiff's unambiguous and express written instruction regarding disbursement of the Escrow Funds.

33.     Plaintiff has been damaged by reason of Defendant's breach of contract and fiduciary duties through loss of its $5,000,000, use thereof, interest thereon, and the incurring of attorneys' fees and expenses to enforce Plaintiff's rights under the Escrow Agreement and applicable law.

34.     Defendant's actions and conduct is inconsistent with its obligations owed to Plaintiff.

35.     Defendant's defiance of Plaintiff's unambiguous instructions and abrogation of its contractual and fiduciary duties have no justification and can only be described as grossly negligent or willful.

36.     Plaintiff fully complied with its obligations under the Escrow Agreement.

## As and For a First Claim
### (Breach of Contract)

37.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "36" above as though set forth at length herein.

38.     The Escrow Agreement constitutes a valid and binding contract between Plaintiff and Defendant.

39.     Defendant owed to Plaintiff a duty to satisfy its obligations under the Escrow Agreement.

40.     The Escrow Agreement requires Defendant to within one business day after receipt of written instructions to return to Plaintiff the Escrow Funds via the wire instructions set forth in Exhibit A annexed to the Escrow Agreement.

41.     Plaintiff duly gave written notice to Defendant of its direction to return the Escrow Funds to Plaintiff via the wire instructions set forth in Exhibit A annexed to the Escrow Agreement.

42.     Defendant without excuse or justification has refused to abide by the direction given to it by Plaintiff in abrogation of the Escrow Agreement.

43.     Plaintiff has suffered direct and foreseeable damages as a result of Defendant's refusal to honor its contractual obligations.

44.     Plaintiff is entitled to judgment against defendant in the amount of $5,000,000.00 plus interest thereon for the Escrowed Funds wrongfully retained by Defendant in contravention of Plaintiff's express written instructions and the express terms of the Escrow Agreement.

## As and For a Second Claim
### (Breach of Fiduciary Duty)

45.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "44" above as though set forth at length herein.

46.     Defendant served in a fiduciary role to Plaintiff inasmuch as Plaintiff placed trust and confidence in Defendant which was under a duty to hold the Escrow Funds for the benefit of and at the direction of Plaintiff.

47.     As a fiduciary for Plaintiff, Defendant owed Plaintiff a duty of loyalty.

48.     Defendant breached its fiduciary duty to Plaintiff by refusing to follow the express written direction of Plaintiff to return the Escrow Funds to Plaintiff.

49.     Plaintiff has suffered direct and foreseeable damages as a result of Defendant's breach of its fiduciary obligations.

50.     Plaintiff is entitled to judgment against defendant in the amount of $5,000,000.00 plus interest thereon for the Escrowed Funds wrongfully retained by Defendant in contravention of Plaintiff's express written instructions and in contravention of its fiduciary duties owed to Plaintiff.

51.     In addition , Plaintiff is entitled to judgment for its attorneys' fees and expenses incurred as a result of Defendant's breach of its fiduciary duties.

WHEREFORE, Plaintiff is entitled to judgment against Defendant as follows:

a.      On its First Claim:  Judgment  in the amount of $5,000,000.00 plus interest thereon; and

b.      On its Second Claim:. Judgment in the amount of $5,000,000.00 plus interest thereon as well as all attorneys' fees and expenses incurred as a result of Defendant's breach of its fiduciary duties in an amount to be determined at trial or inquest; and

c.     Awarding to Plaintiff the costs and expenses of this action, including reasonable attorneys' fees; and

d.     Awarding to Plaintiff such further and different relief as the Court demes just and appropriate in these circumstances.

Dated:     New York, New York
            July 5, 2018

Goldberg Weprin Finkel Goldstein LLP

By: _____
         Matthew Hearle (MH-3596)

1501 Broadway – 22nd Floor
New York, New York 10036
(212) 221-5700
mhearle@gwfglaw.com

*Attorneys for Plaintiff*